## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JASMIN N. ROWLETT** | ) | |
| | ) | |
| **Baltimore, MD 21236** | ) | |
| | ) | |
| *Plaintiff,* | ) | **Case No. 19-2896** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BALTIMORE CITY, MARYLAND;** | ) | |
| **BALTIMORE POLICE DEPARTMENT** | ) | |
| **242 W. 29th Street,** | ) | |
| **Baltimore, MD 21211** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| **Serve:** | ) | |
| | ) | |
| **The Baltimore City Law Department** | ) | |
| **Office of Legal Affairs** | ) | |
| **C/O City Hall, Room 101** | ) | |
| **100 N. Holliday St., Suite 101** | ) | |
| **Baltimore, MD 21202** | ) | |
| | ) | |
| **Baltimore Police Headquarters** | ) | |
| **601 E Fayette St.** | ) | |
| **Baltimore, MD 21202** | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff, Sergeant Jasmin N. Rowlett, Plaintiff, (hereinafter "Plaintiff" or

"Sgt. Rowlett"), by and through her undersigned counsel and complains against Defendant,

Baltimore City Police Department, (hereinafter "Defendant" or "BPD") and in support thereof

states as follows:

## INTRODUCTION

1.      This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") and the Civil Rights Act of 1866, Section 1981(a)  ("Section 1981")  for the Defendant's unlawful harassment, discrimination based on race (African American), sex (female), sexual harassment, and retaliation against the Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for her statutorily-protected activity.

## JURISDICTION AND VENUE

2.   This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and Section 1981, to redress and enjoin employment practices of the Defendants.

3.   This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

4.   Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

5.   Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

6.   Plaintiff has exhausted all of her administrative remedies.

7. Plaintiff filed a complaint with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission (EEOC) on December 17, 2018, alleging race (African American) discrimination, sex (female), sexual harassment, and retaliation.

8. A Right-to-Sue letter (dated July 3, 2019) was issued to Plaintiff from the EEOC which Plaintiff received on July 5, 2019.

9. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## **NATURE OF THE ACTION**

10. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

11. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility and denial of her constitutional and statutory rights.

12. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## **PARTIES**

13. Plaintiff, Sergeant Jasmin N. Rowlett, is an African American female who resides in Baltimore County.

14. Defendant is a municipal police force, whose jurisdiction encompasses Baltimore, Maryland, the State's largest city.

15. The BPD is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of 611,648.

16. Sgt. Rowlett works at the City of Baltimore City Police Department ("BPD") and is a member of Baltimore City Lodge No. 3, Fraternal Order of Police ("FOP"), which is a Maryland corporation that is designated as the exclusive representative of Baltimore Police Officers holding the ranks of police officer, police agent, flight officer, police sergeant, police lieutenant, and detective. The relationship between employer representative BPD and employee representative Lodge is governed by a Collective Bargaining Agreement ("CBA" or "Agreement").

17. A Memorandum of Understanding II ("MOU II") covers Unit II employees, which include Police Sergeants and Police Lieutenants.

18. The Baltimore City Lodge No. 3, Fraternal Order of Police, Unit II ("Lodge") provides labor management relations, establishes leave and salary requirements, work hours database management for those employed by the police department.

19. During the relevant period, Defendant employed Plaintiff, Sgt. Rowlett.

20. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

21. Plaintiff, Sgt. Jasmin Rowlett, has been employed by Defendant, the City of Baltimore City Police Department ("BPD") from September 23, 2009, until present, as a Patrol Sergeant.

22. On or about October 7, 2016, Plaintiff was promoted to the position of Patrol Sergeant, and assigned to the Central District.

23. Plaintiff is an African American female, who has previously engaged in statutorily protected activity.

24. Sgt. Rowlett has consistently been the target of sexual harassment, retaliation, workplace hostility, and gender discrimination because of her race and sex.

25. Several officers have engaged in harassing Sgt. Rowlett, by spreading false rumors of sexual promiscuity with multiple subordinate officers, to include allegations of a sexual relationship with a subordinate, Officer Luis Garcia (Hispanic, male).

26. For example, Officer Paul Creer stated to Sgt. Rowlett that his wife said that they could not work together because there were rumors of them having sex, or words similar.

27. Officer Juan Rivas (Hispanic, male) stated to Sgt. Rowlett that several officers asked if he had sex with her yet, or words similar, and indicated that there were rumors of them being in a relationship.

28. Officer Eric Lewis informed Sgt. Rowlett that several officers thought that they were engaging in a sexual relationship, or words similar.

29. Officer Luis Garcia informed Sgt. Rowlett on an almost daily basis that officers were also accusing him of having sex with her, or words similar.

30. Officer Luis Garcia reported this harassment to his direct supervisor, Sergeant Craig Taylor and his complaint was ignored.

31. On numerous occasions, between January 2018 and December 2018, Sergeant Craig Taylor, also made unwanted sexual advances toward Sgt. Rowlett, to include physically pressing his body against her, asking her to have a threesome with him and his girlfriend, and texting her sexually suggestive questions.

32. Sgt. Rowlett believes that this harassment was allowed to persist by Defendant because of

her race and sex.

33. Although the rumors about Plaintiff were untrue, the Defendant demonstrated differential treatment based on race and sex. Specifically, Sergeant Brian Kratz (Caucasian, male) and Officer Ashely Acord (Caucasian, female) dated while Sergeant Kratz was her direct supervisor, which was known to the entire department, yet they were not harassed about it, no adverse actions was taken against them, and no Internal Affairs investigations were lodged against them.

34. Lieutenant John Jackson (African American, male) has showed favoritism to other male officers by giving them preferential treatment for requests for time off and selectively sharing overtime opportunities, which are in violation of the policies set forth in MOU II.

35. As a result of the alleged rumors against her, Plaintiff was charged with fraternization.

36. Sgt. Rowlett believes that she was charged with fraternization because of her race and sex.

37. Despite overt instances of actual fraternization between and among, and favoritism by Caucasian males, Plaintiff, as an African American woman, was formally charged with fraternization based on rumors, alone.

38. Sgt. Rowlett has filed complaints regarding the discriminatory and sexually harassing treatment she experienced because of, as she believes, her race and sex, and requested a transfer as a result.

39. However, Defendant has not taken action to abate the disparate treatment and denied Plaintiff's requests for transfer.

40. In one instance where Plaintiff complained to her supervisor, Lieutenant Jackson, about Sergeant Taylor making sexual comments to her and to the officers about her, Lieutenant Jackson responded, "you are [a] supervisor, you're gonna have to deal with people talking

about you," or words similar.

41. Despite Sgt. Rowlett's objections to the discrimination, sexual harassment, and hostile work environment, Defendant has ignored her complaints.

42. After it was learned that Plaintiff had begun formally complaining, Defendant and its agents, began to refer to Sgt. Rowlett as "ghetto" and seemingly intentionally addressed her by the incorrect names, such as "Jameesha, Shameesha, or Jaquetta," which are considered stereotypical urban African American names.

43. Sgt. Rowlett continues to work in a hostile work environment with constant threat of unwanted touching and undermined authority.

44. Defendant has engaged in or perpetuated a long-standing pattern and practice of discrimination against African American female officers, like Plaintiff, on the basis of race and sex by:

    a.    maintaining and allowing a hostile work environment, including, but not limited to, subjecting African American female officers to severe and pervasive racially and sexually derogatory remarks and actions; commencing unwarranted and unfounded investigatory/disciplinary proceedings against African American female officers; imposing overly severe disciplinary penalties; refusing to transfer the African American female officers to a different unit to escape harassment; and attacking the credibility of those who have opposed discriminatory practices;

    b.    engaging in a pattern of retaliatory actions against African American female officers, who complained about, or otherwise opposed, racially and sexually hostile acts or other misconduct by Caucasian male police officers.

   c.    maintaining centralized disciplinary policies and procedures that disparately treat women differently, by facilitating the imposition of unfounded, unwarranted and overly severe and disparate penalties, such as: (i) suspension from the force and/or of police powers, (ii) refusal to accept fitness for duty certifications, and (iii) refusal to provide backup on calls.

45. Based on reason and belief, there is a pattern and practice of discrimination, against African Americans and females, by the Defendant.

### *Baltimore Police Department Discriminated and Retaliated Against Plaintiff*

46. Plaintiff has filed internal complaints with BPD and a complaint with the EEOC in opposition to the various discriminatory, harassing, and retaliatory employment practices sanctioned by the Defendant.

47. Sgt. Rowlett has consistently been a vocal advocate against the discrimination and unfair treatment of African American and female Officers at the BPD.

48. As a result, the BPD created a targeted scheme to silence Sgt. Rowlett by undermining authority over her direct reports, denying her requests for transfer, and charging her with fraternization.

49. On June 5, 2018, Sgt. Rowlett wrote a request to Major Darryl Gains for approval to transfer to a different shift due to a conflict of interest with her subordinate, Officer McBride. This request went unanswered.

50. On September 27, 2018, Sgt. Rowlett wrote a second request to Major Darryl Gains for approval to transfer to a different shift due to a hostile work environment. This request was ignored.

51. On November 16, 2018, Sgt. Rowlett wrote a third request to Major Darryl Gains requesting that he address the workplace harassment that she was experiencing. Again, this request went unanswered.

52. On December 2, 2018, Sgt. Rowlett wrote a fourth request to Major Darryl Gains, detailing that a subordinate Officer should be reprimanded for addressing Sgt. Rowlett in a disrespectful manner during roll call. This request went unanswered.

53. Shortly after receiving this last complaint, on or about December 2018, Lieutenant Jackson formally charged Sgt. Rowlett with fraternization with Officer Luis Garcia, based on a rumor spread by another Officer.

54. As a result of the charge, Sgt. Rowlett was the subject of an investigation by Internal Affairs.

55. Plaintiff developed emotional distress as a result of the discrimination and harassment in her work environment, and advised the Defendant, accordingly.

56. As a result, Sgt. Rowlett was forced on unpaid administrative leave because she was experiencing distress from the harassment at work, and for approximately nine (9) months, Defendant refused to certify her as ready to return to work leaving her without pay and in a non-duty status.

57. During her forced unpaid administrative leave, Plaintiff was subjected to persistent Return to Duty Fitness assessments, which served as a rubber stamp for the Defendant's apparent desire and concerted efforts, to keep her out of work, in retaliation for her statutorily-protected activity.

58. During these exams, the physician would only conduct a cursory assessment of Plaintiff for two-to-three minutes, and issued a determination that Plaintiff was unfit to return for duty.

59. On or about August 2019, after providing an independent medical assessment, the forced administrative leave was magically lifted, and she was reassigned to a different precinct, which is commonly known to be a punishment District.

60. This precinct is rumored to be punitive, which has caused Sgt. Rowlett further embarrassment and humiliation.

61. The Defendant continually engaged in actions that reinforced the "good ole' boy" system, where it is acceptable for Caucasian men to engage in conduct, even if it violates policy, without being held accountable, yet if African American women are even rumored to engage in similar conduct or actions, they are subjected to punitive measures, adverse and hostile treatment, and put out of work. for being rumored to have been engaging in actions that Caucasian males and females were openly engaging in.

62. The Defendants' discriminatory and retaliatory practices have been effectuated in violation of both Title VII of the Civil Rights Act and Section1981.

***Plaintiff Was Falsely Imprisoned by Defendant***

63. On or about July 2019, Plaintiff was falsely imprisoned by Defendant when it locked her in a room and forced her to give a taped statement as a "witness" to Internal Affairs while she was on a no pay status. During this incident, the door was blocked and Plaintiff was told that she was not free to leave. Additionally, Defendant refused to sign Plaintiff's overtime slip, which she still has in her possession.

## COUNT I

### VIOLATION OF TITLE VII – RACE DISCRIMINATION

64.  Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

65.  Plaintiff is a member of a protected class as an African American woman.

66.  Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

67.  Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

68.  Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

69.  Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

70.  Defendant has limited and reprimanded Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her race.

71.  Other employees who were similarly situated, but were non-Hispanic Caucasian individuals, which is different from Plaintiff, have been treated more favorably than Plaintiff with regards to the terms and conditions of employment and workplace conditions

72.  Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

73.  Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

74.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

75.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race.

76.     Defendant discriminated against Plaintiff because of her race by engaging in, tolerating or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

77.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

78.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

79.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

80.     Further, Defendant's treatment and actions were ongoing.

81.     Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

82.     Similarly situated non-Hispanic Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

83.　Baltimore City Police Department must comply with Title VII, but by and through their

conduct, have violated Title VII.

## COUNT TWO

### VIOLATION OF TITLE VII – SEX DISCRIMINATION (GENDER)

84. Plaintiff incorporates all information and allegations contained in the preceding paragraphs

as if fully set forth herein.

85. As a female, Plaintiff is a member of a protected class.

86. Defendant treated Plaintiff less favorably than similarly situated male employees.

87. Because of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions

alleged throughout this Complaint under Title VII.

88. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and

conditions of Plaintiff's employment.

89. Defendant knew that Plaintiff was a woman prior to the adverse actions described throughout

the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was

subjected to because of her sex.

90. Plaintiff has been treated differently and subjected to different terms and conditions of her

employment due to her sex.

91. Defendant has limited, segregated and classified Plaintiff in a way that deprived her of

employment opportunities and otherwise adversely affected her status as an employee

because of her sex.

92. Other employees who were similarly situated, but members of a class (men) different than

Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of

employment.

93. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

94. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

95. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

96. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her sex.

97. Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

98. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

99. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

100.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

101.    Further, Defendant's treatment and actions were ongoing.

102.    Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

### COUNT III

### VIOLATION OF TITLE VII – SEXUAL HARRASSMENT
### (HOSTILE WORK ENVIRONMENT)

103.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

104.    The actions and conduct of the above-described perpetrators as set forth herein created a sexually hostile, offensive and intimidating work environment and detrimentally affected Plaintiff.

105.    The actions and conduct by the above-described perpetrators as set forth herein were severe and pervasive and based on Plaintiff's sex as a female and constituted discrimination based on sex.

106.    The actions and conduct described herein would have detrimentally affected a reasonable person of the same sex in Plaintiff's position.

107.    Defendant knew or should have known of the sexual harassment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the sexual harassment.

108.    By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of sexual harassment; failing to redress the sexual harassment of Plaintiff by Lt. Jackson; by consciously failing to protect Plaintiff from sexual harassment within the Department; and by punishing Plaintiff for her complaints of sexual harassment, Defendant exacerbated the sexually hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII..

109.    Defendant's actions, and failure to act, amounted to sex discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment

known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

110.    As a direct result of Defendant's unlawful acts of sexual harassment, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

## COUNT IV

### VIOLATION OF TITLE VII – RETALIATION

111.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

112.    Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

113.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

114.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings.

115.    The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

116.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

117.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

118.    Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

119.    Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

120.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

121.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

122.    Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

123.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

124.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

125.   Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

126.   Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

127.   Baltimore City Police Department must comply with Title VII, and by and through their conduct, violated the law.

128.    The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

129.    Defendant is directly liable for the discriminatory acts or omissions of its employees while acting within the court and scope of their employment, under the theory of *Respondeat Superior*.

130.    Defendants actions were intentional, reckless, and malicious.

131.    As a direct and proximate cause of Defendants' conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages—including but not limited to past and future loss of income, benefits, and career opportunities—and is entitles to all available legal and equitable remedies.

132.    Plaintiff was humiliated, embarrassed, and made to ensure a great amount of pain and suffering. Plaintiff's injury is permanent in nature. Further, Defendants actions were ongoing.

133.    Plaintiff has incurred lost wages, loss of reputation, defamation of character now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT IV

### VIOLATION OF SECTION 1981

134.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

135.    As an African American, Plaintiff is a member of a protected class.

136.    Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1981.

137.    Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

138.    Defendant knew that Plaintiff is an African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of her race.

139.    Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American).

140.    Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee, because of her race (African American).

141.    Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

142.   Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

143.   The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

144.   Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American).

## COUNT V

## FALSE IMPRISONMENT

145.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

146.   Plaintiff was falsely imprisoned when she was unlawfully confined in a room in order to be forced to provide an interview as a witness to Internal Affairs when she was in an unpaid leave status, without her consent.

147.   As a result, Plaintiff was deprived of her liberty without consent or legal justification.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sergeant Jasmin Rowlett, respectfully prays that this Court grant her the following relief:

a.) Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII and Section 1981.

b.) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.) Award back pay and compensatory damages in amounts to be determined by the jury that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendants alleged herein;

d.) Award punitive damages for Plaintiff's false imprisonment;

e.) Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

f.) Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Respectfully submitted,

By:   /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
(Bar No. 19486)

District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C. 20003
Tel.  (202) 486-3478 |
Dionna@DistrictLegalGroup.com

*Counsel for Sergeant Jasmin Rowlett*